### ALLEN *against* RANNEY:

### IN ERROR.

THIS was a bill in chancery, to set aside an award, and to examine and adjust the accounts of the parties.

The bill stated the following facts. In *April*, 1814, *Ranney* conveyed, by bill of sale, to *Allen*, a sloop called *The Opposition*, as security for debts due from *Ranney* to *Allen*, and for indorsements made by *Allen* for *Ranney's* accommodation. In *December* 1814, *Allen* sent the sloop to *New-*

haviour in the parties; but not because new evidence has been discovered which would put the case upon a different footing, nor because the adoption of a different rule would effect more complete justice between the parties.

*Hartford,*
June, 1816.
Huntington
*v.*
Edwards.

A court of equity may set aside an award, for corruption or partiality in the arbitrators, for mistakes on their own principles, and for fraud and misbe-

*York* for sale, by *Ranney's* consent; but as *Ranney* directed him not to sell her for less than a specified sum, which could not be obtained, she was not sold. In the month of *March* 1815, *Allen* employed the sloop as he thought best for the concern, and so continued to employ her, until the 15th of *June* following. *Allen* had paid divers sums of money on the notes which he had endorsed for *Ranney;* and various controversies arose between them respecting their accounts, and their relative rights in the sloop. These controversies, and all others between them, were, on the 10th of *August* 1815, submitted to the abitrament of *Stephen T. Hosmer, Thomas Mather* and *Samuel Wetmore,* Esquires, who awarded in favour of *Allen* the sum of 1615 dollars. *Allen* claimed, that a much larger sum was due to him. His principal grounds of complaint were, that the arbitrators in adjusting the accounts, charged him with the charter of the sloop from the time he took possession of her for the purpose of sending her to *New-York* until she returned to *Middletown,* at the rate of 2 dollars 50 cents per ton, on the supposition that she was so sent to *New-York* without *Ranney's* consent, whereas it can now be proved that this was done with his consent; and that the arbitrators did not allow against *Ranney* a bill of disbursements amounting to 120 dollars, made by the captain of the sloop while she was in *Allen's* possession, which bill of disbursements was not brought directly before them, but which they declared they would have allowed, or such portion thereof as was properly expended for the sloop, had they understood that such disbursements had been made.

There was a general demurrer to the bill; on which judgment was given for the defendant. The plaintiff then brought the present writ of error, assigning the general error.

*C. Whittelsey,* for the plaintiff in error, contended that where the submission is by the act of the parties, or by reference at *Nisi Prius,* a court of equity, on a bill against the party only, will set aside an award, if in any respect it appear to be unjust. *Ives* v. *Medcalf,* 1 *Atk.* 64. *South Sea Company* v. *Bumstead,* 1 *Eq. Ca. Abr.* 80. *pl.* 8. *Ridout* v. *Pain,* 3 *Atk.* 494, 5. *Anon.* 3 *Atk.* 644. *Champion* v. *Wenham, Ambl.* 245. *Newland* v. *Douglass,* 2 *Johns. Rep.* 62. *Kyd* 354. *& seq.* 1 *Bac. Abr. tit.* Arbitrament. (K).

*Clarke,* for the defendant in error, insisted that this award having been regularly made, could be set aside only for corruption or misbehaviour in the arbitrators, or for a clear mistake of law. *Tittenson* v. *Peat,* 3 *Atk.* 529. *Parker* v. *Avery, Kirb.* 353.

*Hartford,* June, 1816.

Allen *v.* Ranney.

SWIFT, Ch. J. Courts of equity can set aside awards for corruption and partiality in the arbitrators; for mistakes on their own principles; and for fraud and misbehaviour in the parties. Here there is no pretence of corruption in the arbitrators; there is no allegation of any mistake by them, or any fraud in the party, which will warrant the interposition of a court of equity. On the principle contended for, every award might be re-examined; and arbitrations, instead of being an expeditious mode of settling controversies, would only be calculated to lengthen and perplex them. The discovery of new evidence; or that the case might be put on a different footing by new evidence; or that a more perfect rule might have been adopted; are no grounds for an application to a court of chancery.

In this opinion the other Judges severally concurred.

Judgment affirmed.