[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON ARBITRATION AWARD
FACTS
The plaintiff and defendant entered into a collective bargaining agreement covering the period from July 1, 1994 to June 30, 1999. That agreement contained provisions with respect to wages, hours and conditions of employment. The union submitted a grievance to arbitration claiming a violation of certain contractual provisions relating to overtime pay.
The submission to the arbitrator involved three issues: (1) did the agency violate the provisions of Article 18, Section 1 and/or Article 27, Section 3 of the contract via its method of compensating HRO staff attorneys working overtime in general and on November 14, 1994 (Veteran's Day) specifically; (2) Further, did the agency's actions constitute a CT Page 7323 violation of Article 1, Section 1, Article 2 and/or Article 19, Sections 1 and 3; (3) In the event of violation, what shall be the remedy consistent with the contract. An arbitration hearing on the above dispute was held on June 3, 1997. On September 12, 1997 the arbitrator issued the following award:
 "The agency violated the provisions of Article 18, Section 1 of the contract via its method of compensating HRO staff attorneys working overtime in general and on November 14, 1994 (Veteran's Day) specifically.
 The State shall pay to each CHRO attorney the appropriate Article 18 overtime wage compensation for all hours of work beyond 35 hours per week, as were reasonably necessary to carry out the assigned responsibilities of that attorney; less any hours for which offsetting compensatory time off was allowed. This retroactive relief shall run back to thirty days prior to the date on which the present grievance was filed.
 Jurisdiction is retained to rule on any matters that the parties may not be able to themselves resolve regarding the specific back pay entitlement of any given CHRO attorney, pursuant to the remedy set forth in the preceding paragraph."
The State claims that the award should be vacated because it contains an error of law and it is in violation of public policy. The State asked the court to vacate the award pursuant to Section 52-418 of the Connecticut General Statutes. The bargaining unit claims that there is no error in the award and asked the court to confirm the award pursuant to Section 52-420 of the General Statutes.
DISCUSSION
At the arbitration the parties agreed that the entitlement to overtime payment under Article 18 of the labor agreement turns on whether the employee is "eligible" for such overtime wage compensation under the Federal Fair Labor Standards Act [ELSA] and the related Connecticut statute, Connecticut General Statute § 5-245; or whether the employee is "exempt" under one of the statutory exemptions set forth in the Federal Act and State Statute. The two concepts, "eligible" and "exempt" are co-exclusive and as a result a non-exempt employee under FLSA may be contractually entitled to overtime wage compensation as set forth in CT Page 7324 Article 18 of the disputed contract.
Article 18 incorporates into the contract the statutory criteria for determining an employee's overtime wage eligibility. The arbitrator was faced with interpreting the incorporated language as a matter of contract. In interpreting the contract language, the arbitrator found that the employees were not "exempt" and ordered the overtime pay. The arbitrator decided that CHRO had treated its trial attorneys as hourly employees and therefore, notwithstanding their professional career status, they were not professionals within the meaning of the Fair Labor Standards Act and consequently were not "exempt" within the meaning of FLSA or the Connecticut Statute.
Clearly the State disagrees with the arbitrator's analysis of the professional status of the employees involved. The State claims that the arbitrator made an error of law in interpreting the Fair Labor Standards Act and that there is a violation of public policy in ordering the payment of overtime to employees to whom overtime need not be paid under the Federal Fair Labor Standards Act.
The court recognizes that our Supreme Court has recently ruled that de novo review is required in determining whether an award violates public policy. Schoonmaker v. Cummings Lockwood of Connecticut, P.C.,252 Conn. 416, 429 (2000). However, the court has also made it clear that the Schoonmaker decision is not intended as a retreat from the position favoring arbitration as a preferred method of settling dispute resolutions and that the longstanding principle that findings of fact are left undisturbed upon judicial review remains unchanged. Schoonmaker at 432.
The Supreme Court has also recently held:
 "On review of an arbitration award, even on a claim of public policy violation, neither the trial court nor this court has authority to make findings of fact that arbitrators did not make [citations omitted]. Groton v. United Steel Workers of America, 252 Conn. 508, 523
(2000)."
Clearly the general rule in Connecticut is that arbitration awards are upheld and courts will not examine an arbitrator's factual or legal conclusions even if they are contrary to the court's opinion of the facts or the law. Board of Education of the City of Bridgeport v. BridgeportEducation Association, 173 Conn. 287, 290 (1977).
The Supreme Court has specifically held: CT Page 7325
 "Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrator's decision of the legal question involved. Big Ten Corporation v. Local 134, 183 Conn. 579, 581 (1981)."
In the case before this court the submission was unrestricted in the sense that the arbitrator was empowered to interpret the contract and render decisions on the issues which were before him.
Essentially the State argues that this dispute is not appropriate for settlement by arbitration. The State argues that it is a pure matter of statutory interpretation. This argument was made to the arbitrator and rejected. The State likewise argues that this is a matter of public policy. The court does not agree with the State on either of these propositions. The arbitrator in this case is not directly interpreting either the Fair Labor Standard Act or the corresponding State Statute. Rather, he is interpreting a contract which incorporates the language of that act for the purpose of defining the right to overtime.
The court acknowledges that both the State and Federal Acts require the payment of overtime to certain categories of employees. The court finds nothing in the State or Federal Acts which prohibits the payment of overtime to any employees. Admittedly, certain exempt employees need not be paid overtime if they have not bargained for such overtime. No arbitrator could relieve the State of the obligation to pay overtime to employees entitled to overtime by State and Federal law. However, the State's argument that the converse of that proposition i.e. that the State may not bargain to pay overtime to "exempt" employees is simple not true.
Whether or not the court would have interpreted the incorporated statutory language in the same manner as the arbitrator is not the issue. It is clear that it is neither illegal nor a violation of public policy for the State to have entered into a contract which entitles staff attorneys to overtime. The arbitrator has read this contract as doing precisely that. The award is within the submission and the court is not at liberty to review the arbitration for errors of fact or errors of law.
The motion to vacate is denied. The motion to confirm is granted. CT Page 7326
Kevin E. Booth, J.